UNITED STATES of America, Appellee,

v.

Mohammed A. SALAMEH, Nidal Ayyad, Mahmud Abouhalima, also known as Mahmoud Abu Halima, Defendants–Appellants,

Leonard Weinglass and Jesse Berman, Appellants.

Nos. 1668, 1678, Dockets 93–1270, 93–1275.

United States Court of Appeals, Second Circuit.

Argued April 27, 1993.

Decided April 30, 1993.

Gabriel W. Gorenstein, Asst. U.S. Atty., New York City (Roger S. Hayes, U.S. Atty. for the S.D. of N.Y., William Hoffman, J. Gilmore Childers, Asst. U.S. Attys., on the brief), for appellee.

Burt Neuborne, New York City (Norman Dorsen, Henriette D. Hoffman, Abraham L. Clott, The Legal Aid Soc., Federal Defender Services Unit, on the brief), for defendant-appellant Salameh.

Martin Garbus, New York City (Russell Smith, Kyran Cassidy, on the brief), for defendants-appellants Ayyad and Abouhalima, and appellants Weinglass and Berman.

Arthur N. Eisenberg, New York City, submitted a brief for amicus curiae New York Civil Liberties Union.

Gibson, Dunn & Crutcher, New York City (Robert D. Sack, Edward T. Ferguson, III, Susan Berger Sabreen, Leonard Hersh, Stuart D. Karle, David Schulz, Rogers & Wells, Adam Liptak, Elizabeth McNamara, Lankenau, Kovner & Kurtz, Constance Heymann, New York City, Christopher J. Nolan, Melville, NY, Richard L. Klein, Willkie Farr & Gallagher, New York City, of counsel), submitted a brief for amici curiae Dow Jones & Co., Inc., The Associated Press, The New York Times Co., VV Publishing Corp., Reuters America Inc., Newsday, Inc., and Bloomberg L.P.

Before: LUMBARD, KEARSE, and MAHONEY, Circuit Judges.

PER CURIAM:

Defendants Mohammed A. Salameh, Nidal Ayyad, and Mahmud Abouhalima, and attorneys Leonard Weinglass and Jesse Berman, who in the district court represent Ayyad and Abouhalima, respectively, appeal from an April 1, 1993 order of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, Judge, barring counsel for all parties to the present action from publicly discussing any aspect of the action. Appellants contend principally that the order is an overly broad prior restraint in violation of their rights under the First Amendment to the Constitution. We agree and vacate the order.

The order at issue, entered by the district court orally and sua sponte, without notice or opportunity for argument, provided, in pertinent part, as follows:

> There will be no more statements [in the press, on TV, in radio, or in any other electronic media] issued by either side or their agents. The next time I pick up a paper and see a quotation from any of you, you had best be prepared to have some money. The first fine will be $200. Thereafter, the fines will be squared.

(Hearing Transcript, April 1, 1993 ("Tr."), at 33–34 ("April 1 Order").)

Counsel for Salameh sought to object, without success:

> MR. PRECHT [Attorney for Salameh]: May I be heard, your Honor?
>
> THE COURT: You can say anything you want.
>
> MR. PRECHT: Your Honor, I object to this ruling. I think it would have been entirely appropriate on the day that Mr.—
>
> THE COURT: Mr. Precht—
>
> MR. PRECHT: May I be heard, your Honor?
>
> THE COURT: The ruling has been made.
>
> MR. PRECHT: I understand, but I want to state my objection for the record.
>
> THE COURT: Sit down and write it out right now.

(Tr. 34–35.)

In his written statement, counsel asked the court to modify its order so as to permit counsel to "discuss the evidence to the extent that their remarks address evidence that has already been leaked by the gov[ernment]," and to "address publicly the conditions of Mr. Salameh's confinement." (Court Exhibit 1.) The court stated that it would grant these requests only if Salameh would stipulate that he would "have no argument whatsoever about fairness of the trial or the jury or jury selection." (Tr. 38.) Counsel declined so to stipulate.

In further colloquy, counsel for the other defendants asked for clarification:

> MR. WEINGLASS: .... The point that I would object to is the over breadth. I'm not sure what you mean by no statements. Most courts limit it to evidence about the case. I assume I can still talk about my client's background, his financial position, his family and anything not related to evidence in the case?
>
> THE COURT: Look, you heard me start off. I am interested in keeping the trial here. That's all. What else happens I could care less about. The trial, the evidence, the facts belong in the courtroom. No place else. You want to talk about your client's growth, where he was born, what he did, I don't give a darn. Has nothing whatsoever to do with what we are dealing with here.
>
> MR. WEINGLASS: Thank[ ] you your Honor.
>
> MR. BERMAN: I just wanted to get a similar clarification. In terms of my client's having been tortured in Egypt—
>
> THE COURT: Mr. Berman, does that have anything to do with this case? If you are going to make statements about it, I will have to assume it has absolutely nothing to do with this case.
>
> MR. BERMAN: It may have something to do with the case, No. 1, Judge.
>
> THE COURT: Then I will suggest you don't talk about it.

(Tr. 36.)

 An order that prohibits the utterance or publication of particular information or commentary imposes a "prior restraint" on speech. A prior restraint on constitutionally protected expression, even one that is intended to protect a defendant's Sixth Amendment right to trial before an impartial

jury, normally carries a heavy presumption against its constitutional validity. *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 570, 96 S.Ct. 2791, 2808, 49 L.Ed.2d 683 (1976).

■ Though the speech of an attorney participating in judicial proceedings may be subjected to greater limitations than could constitutionally be imposed on other citizens or on the press, *see Gentile v. State Bar of Nevada,* —— U.S. ——, ——, 111 S.Ct. 2720, 2744, 115 L.Ed.2d 888 (1991), the limitations on attorney speech should be no broader than necessary to protect the integrity of the judicial system and the defendant's right to a fair trial, *see id.* at ——, 111 S.Ct. at 2737, 2745 (a prohibition against attorney statements having a " 'substantial likelihood of materially prejudicing an adjudicative proceeding' " is constitutionally permissible, "for it is designed to protect the integrity and fairness of a state's judicial system, and it imposes only narrow and necessary limitations on lawyers' speech"). This Court has stated that before a district court issues a blanket prior restraint, it must, *inter alia,* "explore whether other available remedies would effectively mitigate the prejudicial publicity," and consider "the effectiveness of the order in question" to ensure an impartial jury. *In re Application of Dow Jones & Co.,* 842 F.2d 603, 611, 612 n. 1 (2d Cir.), *cert. denied,* 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988); *see also In re Application of the New York Times Co.,* 878 F.2d 67, 68 (2d Cir.1989) (per curiam) (vacating district court's "gag" order where there had been no showing, *inter alia,* that prejudice was likely to result from statements made to the press by counsel).

■ The order imposed by the district court in the present case does not meet these standards. The restraint on the attorneys' speech is not narrowly tailored; rather, it is a blanket prohibition that extends to any statements that "have anything to do with this case" or that even "*may* have something to do with the case" (emphasis added). The court did not make a finding that alternatives to this blanket prohibition would be inadequate to protect defendants' rights to a fair trial before an impartial jury. There is no indication in the record that the court ex-

plored any alternatives or at all considered imposing any less broad proscription; indeed the court discouraged counsel from even proffering possible alternatives. The record does not support a conclusion that no reasonable alternatives to a blanket prohibition exist.

We do not mean to imply that the district court may not in the future determine, after proper notice to the parties and an opportunity to be heard, that circumstances exist requiring the imposition of restrictions designed to protect the integrity of the judicial system and the rights of the defendants to a fair trial, and enter an order that is no broader than necessary to achieve those ends. The April 1 Order, however, is not such an order; it violates appellants' rights under the First Amendment, and it must be vacated.

## CONCLUSION

We have considered all of the government's arguments in support of the court's order and have found them to be without merit. The April 1 Order is vacated.

The mandate shall issue forthwith.