**UNITED STATES of America**

v.

**Len DAVIS, et al.**

**Crim. A. No. 94–381.**

United States District Court,
E.D. Louisiana.

Nov. 3, 1995.

## ORDER AND REASONS

BERRIGAN, District Judge.

The Times–Picayune Publishing Corporation and one of its reporters, Michael Perlstein ("Times–Picayune") have filed a motion to intervene to challenge the legality of the court's partial "gag" order entered on December 20, 1994, restricting the extrajudicial comments of the participants in this case.

The Times–Picayune is a daily newspaper circulated in the New Orleans area. The movers claim a right to intervene because the restrictive order impinges on their ability to gather news, which they allege is protected by the First Amendment. Defendant DAMON CAUSEY has filed an opposition to the intervention, noting that all the defendants are African American and alleging that the Times–Picayune has a historic bias against African–Americans in their coverage. CAUSEY argues the Times–Picayune lacks sufficient interest to intervene.

Regardless of the quality of the newspaper and what its editorial bias may or may not be, it is a newspaper of general circulation in the community. Jurisprudence has consistently recognized the right of the news media to appear in matters affecting media access to information. *In re New York Times Co.*, 878 F.2d 67 (2nd Cir.1989); *Application of Dow Jones & Co. Inc.*, 842 F.2d 603 (2nd Cir.1988); *The News–Journal Corporation v. Foxman*, 939 F.2d 1499 (11th Cir.1991).

The Motion to Intervene is GRANTED.

*Motion to Vacate the Restrictive Order*

The Times–Picayune has moved to vacate the December 20, 1994, partial gag order issued by this court. That order read as follows:

### ORDER

The court renders this order to insure that all parties will have a fair and impartial trial in this case.

IT IS ORDERED:

that the United States Attorney, his representatives and agents, the Federal Bureau of Investigation, its representatives and agents, the defendants, Len Davis, Paul Hardy and Damon Causey and their counsel, representatives and agents, shall not make any extrajudicial statements concerning this case to any person or persons associated with any public communications media or that a reasonable person would expect to be communicated to a public communications media, except, however, that nothing herein shall prohibit any individual from the following:

1. Stating, without elaboration or any kind of characterization whatsoever,

a. the general nature of an allegation or defense made in this case.

b. information contained in the public record of this case; or,

c. scheduling or result of any step or decision taken in this case.

2. Explaining, without any elaboration or any kind of characterization whatsoever, the contents or substance of any motion or step in the proceeding, to the extent such motion or step is a matter of public record in this case.

The Times–Picayune challenges the order as being both procedurally and substantively defective.

As for the procedural objection, the Times–Picayune protests that the order was entered without affording input from the media. At the time the order was entered, no representative of the media was a party to this case. The matter was discussed with the parties in the case at the time and the order was entered without any objection from any party. The order has been in effect for over ten months and no one subject to its restrictions has voiced any complaint.

■ As for the substantive objections, the Times–Picayune contends that the partial gag order deprives them of their First Amendment rights by limiting what information they can permissibly draw from the trial participants. The First Amendment broadly protects a newspaper's right to print information it receives and certainly guarantees access to court proceedings. It does not, however, provide a carte blanche to obtain material from whatever source it may choose to contact.

While "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," the Supreme Court has held that "[t]he right to speak and publish does not carry with it the unrestrained right to gather information." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Zemel v. Rusk,* 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965). "[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972).

*The News–Journal Corporation v. Foxman,* 939 F.2d 1499, 1512 (11th Cir.1991). Furthermore, when First Amendment claims clash with a defendant's Sixth Amendment right to a fair trial, the First Amendment interests must yield. *Ibid.* In fact, the trial judge has an *affirmative duty* to assure that a defendant is not adversely affected by prejudicial pretrial publicity. *Ibid.,* see also *United States v. Noriega,* 917 F.2d 1543, 1549 (11th Cir.1990).

■ The Times–Picayune argues as if the partial gag order in this case is a prior restraint on freedom of the press, and thereby subject to close judicial scrutiny. We do not agree. A prior restraint normally consists of a specific judicial prohibition on the dissemination of a particular communication. *Chicago Council of Lawyers v. Bauer,* 522 F.2d 242, 248 (7th Cir.1975). The restrictive order in this case was modeled after one issued in *Application of Dow Jones & Co., Inc.,* 842 F.2d 603 (2nd Cir.1988). In upholding the order, the Second Circuit concluded that it did not constitute a prior restraint of the press. The court noted that "the most offensive aspect" of a prior restraint is the banning of "dissemination of news already known to the press." The restrictive order "limits the flow of information" but is not directed at the press and the media "cannot be haled into court for violating its terms." *Id.,* 842 F.2d at 608.

■ Courts have rightly drawn a "fundamental" distinction between challenges to gag orders lodged by the parties whose speech is directly affected and challenges by third parties, such as the media, who are not themselves restrained—"an order objected to by the former is properly characterized as a prior restraint, one opposed solely by the latter is not." *In re Dow Jones & Company,* 842 F.2d 603, 609 (2nd Cir.1988); *The News– Journal Corp. v. Foxman,* 939 F.2d 1499, 1512 (11th Cir.1991); see also *Radio & Television News Ass'n v. United States Dist. Court of the Cent. Dist.,* 781 F.2d 1443, 1446

(9th Cir.1986); *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir.1975)[1].

■ There is no claim here that any of the parties subject to the restrictive order wish to say anything at all to the media, much less something that would fall within the prohibition. There is no claim that any of the parties subject to the order have any complaint about the restraint. Furthermore, the media does not have any constitutional "right" to obtain information from the parties in this or any other criminal case. Trial counsel can decline to comment, even without a gag order, and the press cannot complain that their First Amendment rights have been violated. *Radio & Television News Ass'n v. U.S. Dist. Court*, 781 F.2d 1443, 1447 (9th Cir.1986).

Courts have repeatedly recognized the unique responsibilities that attorneys and parties to a criminal proceeding have in assuring that pretrial publicity does not prejudice the defendant's Sixth Amendment rights. They are the ones privy to the sort of information that if disclosed, could readily jeopardize the fairness of a trial.

> [T]he speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press ... Lawyers representing clients in pending cases are key participants in the criminal justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their conduct.

*Gentile v. State Bar*, 501 U.S. 1030, 1031, 111 S.Ct. 2720, 2722 (1991).

As pointed out by the court in *Foxman*, the United States Supreme Court has even suggested that an order limiting extrajudicial commentary by trial participants is an appropriate alternative to restraint on the media. 939 F.2d at 1512–1513, citing *Sheppard v. Maxwell*, 384 U.S. 333, 360, 86 S.Ct. 1507, 1521 (1966).

Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused ... Neither prosecutors, counsel for defense, the accused, court staff nor law enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function.

*Sheppard v. Maxwell*, 384 U.S. at 362, 86 S.Ct. at 1522.

■ The Times–Picayune relies heavily on two decisions, *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720 (1991), and *United States v. Salameh*, 992 F.2d 445 (2nd Cir.1993), as justification to vacate or modify the partial gag order. The court finds both of those cases readily distinguishable.

In *Gentile*, the defendant was indicted, and within a few hours of the indictment, his attorney held a press conference. The attorney denounced the government and charged certain officials with corruption. This occurred six months before trial and was a one time event. After trial, the attorney was brought before the state bar association for violating its general prohibition against lawyers making statements to the press that would have a substantial likelihood of materially prejudicing the proceedings. The bar association recommended a private reprimand which was affirmed by the state supreme court. The attorney appealed. In terms of distinguishing features, first, and arguably foremost, the complaining party in *Gentile* was the defense attorney who was defending his freedom to speak. He wanted to speak, did speak and challenged the discipline he received for doing so. He was asserting *his* First Amendment right to speak, as opposed to the press asserting their more amorphous "hope to hear" what someone may or may not choose to say. In this case, none of the parties whose speech is affected by the order has raised any complaint. Sec-

---

1. The court acknowledges *CBS v. Young*, 522 F.2d 234 (6th Circuit, 1975) wherein the 6th Circuit allowed the media to challenge a restraining order imposed on the parties and lawyers in the case, finding that the order was in effect a prior restraint upon the media. We simply disagree with the reasoning and conclusion of *Young*, relying on those appellate courts which have drawn a distinction. See *Application of Dow Jones & Co.*, 842 F.2d at 609.

ondly, the Supreme Court in *Gentile* emphasized that the attorney's comments were "classic political speech." It characterized the issue in the case as "the constitutionality of a ban on political speech critical of the government and its officials" and stated that "speech critical of the exercise of the State's power lies at the very center of the First Amendment." *Id.,* 501 U.S. at 1034, 111 S.Ct. at 2724. No claim has been made in this case that the parties, with or without the partial gag order, have anything to say to the media, much less anything that would constitute political speech.[2] Thirdly, the Supreme Court in *Gentile* was dealing with a generic bar association rule restricting extrajudicial comment in cases across the board, not one, as here, tailored to a specific case with its unique problems of publicity. Finally, the Supreme Court in *Gentile* noted that the attorney's speech was a one-time event, six months before trial, and could not have conceivably affected the fairness of the trial. The partial gag order here is an on-going prophylactic measure to assure a fair trial.

In *Salameh,* the trial judge sua sponte issued an order banning all comments by either side of a criminal case. The attorneys and defendants appealed. The order was overturned as a prior restraint on their speech. Again, the same distinguishing features noted above are present—the protest came from the parties whose speech was curtailed, not from a third party desirous to hear what they might have to say; the order was issued without input from the attorneys, not the situation in this case; the order was a blanket ban on all comment, unlike the order here which allows substantial leeway for the attorneys to explain their respective positions.

The Times–Picayune cannot seriously dispute that pretrial publicity can easily undermine these defendants' rights to a fair trial. For the past year, this community has been repeatedly exposed to news of the arrest and prosecution of New Orleans police department officers for offenses ranging from bribery and drug dealing to homicide. Just recently in our local state court, a female New Orleans police officer was sentenced to death for a multiple homicide, including that of her officer partner. The chief of police and the local U.S. Attorney's Office have made public statements regarding their intent to root out the corruption and "clean up" the New Orleans police department. DAVIS himself is charged in another section of this court with being the ring-leader of a major drug conspiracy, involving eight other New Orleans police officers. That evidence includes an undercover video of the defendant stripping down to his underwear to show undercover agents that he wasn't wired, a video which has been repeatedly shown on television. The fact that the Times–Picayune is not satisfied with the leeway provided by the restrictive order, which allows the trial participants to explain and discuss the positions they have in the case, is indicative of the intense interest in the matter. It is this court's view that allowing unfettered discretion to the trial participants to comment beyond the scope of the order would create a substantial likelihood of materially prejudicing a fair trial.

Alternatives to the restrictive order cannot effectively safeguard these defendants' rights. These alternatives include changing venue, trial postponement, an intensive voir dire, strong jury instructions and sequestration of jurors. *Sheppard v. Maxwell,* 384 U.S. at 356–63, 86 S.Ct. at 1519–1522. The pretrial publicity, to date, has not been so pervasive as to warrant a change of venue. Hopefully, the restrictive order has contributed to that reality. A change of venue is a drastic and extremely inconvenient, as well as expensive, alternative to the problem of pretrial publicity. A defendant should not have to flee his home community in order to obtain a fair trial. With regard to postponement, the government, defense and the public are entitled to as speedy a trial as possible. This trial has been postponed already in order to allow the defense adequate time to prepare, over the objection

---

**2.** Perhaps noteworthy is that defendant HARDY did file a Motion to Declare (Rec.Doc. 221), which attacked in strong language the legitimacy of the prosecution, alleging that it was racially biased. The motion was perfectly permissible under the partial gag order and certainly did not restrain the advocacy of defense counsel.

of one defendant. Considering that this is the first capital case to be going to trial in the Eastern District and considering the on-going interest in police corruption issues in the city, it is unlikely that publicity would abate with additional postponements. With respect to voir dire, the court does intend to individually question prospective jurors as to their knowledge of the case. Considering again that this is a capital case, and that it involves issues of widely publicized police corruption, impaneling a jury unaffected by the publicity will be difficult as it is. That difficulty does not need to be compounded by extraneous comments from the parties to the case. No does the court consider adequate the notion that jurors too familiar with the case can readily be excused from service ("It is not in the parties' interest or in the interest of justice to exclude from the jury all citizens who read the [newspaper] or who otherwise keep abreast of current events." *Levine v. U.S. Dist. Court for C. Dist. of Cal.,* 764 F.2d 590, 600 (9th Cir.1985). Emphatic jury instructions to disregard prejudicial publicity is an unsatisfactory solution. It is difficult, if not impossible, to "unring a bell"[3]. Finally, the court hopes to avoid sequestration of the jury, since that creates a hardship and inconvenience for jurors, who are not at fault, and which can negatively impact on their concentration in the case.

> In a criminal case the trial judge has a duty and obligation to attempt to protect the right of the defendants to a fair trial, free of adverse publicity. Where the case is a notorious one, that burden on the court is heavy. The most practical and recommended procedure to insure against dissemination of prejudicial information is the entry of an order directing that attorneys, court personnel, enforcement officers and witnesses refrain from releasing any information which might interfere with the right of the defendant to a fair trial.

*Farr v. Pitchess,* 522 F.2d 464, 468 (9th Cir.1975).

The Times–Picayune has its full constitutional right to attend the court proceedings and peruse pleadings that are filed in the public record of the case. They also can query the trial participants, who are free to respond within the confines of the order. Under the circumstances, they are entitled to no more.

The Motion to Vacate is DENIED.

---

**3.** When one is told, "Don't think about elephants," the immediate image in the mind is an elephant. So goes the effectiveness of instructions to disregard.