[No. 63205-7.   En Banc.   February 22, 1996.]

THE STATE OF WASHINGTON, *Respondent,* v. BRIAN BASSETT, *Petitioner.*

*John L. Farra,* for petitioner.

*H. Steward Menefee, Prosecuting Attorney,* for respondent.

PER CURIAM. — Brian Bassett, who is awaiting trial in Grays Harbor County Superior Court on three counts of aggravated first degree murder, has moved for direct discretionary review of a pretrial order of the Grays Harbor County Superior Court precluding all counsel from publicly discussing the case. We grant review and vacate the order.

At the conclusion of Bassett's preliminary appearance in superior court on August 14, 1995, the trial court said "this is a matter of high profile. There's a lot of people here, and there's a lot of press, so I'm going to tell you gentlemen right off the bat, Mr. Farra, Mr. Copland, Mr. Menefee, you and your staffs and your employees shall not be discussing this matter with anyone outside of this

courtroom."[1] Counsel for Bassett, John L. Farra, moved for reconsideration of what he denominated an "oral gag order," arguing that he should be permitted to "counteract the adverse publicity" by talking to the press.[2] Farra also said the publicity had already so tainted the jury pool in Grays Harbor County that "a motion for a change of venue will be made" once the gag order issue was resolved.[3] After listening to Farra's argument on this motion, the trial court observed that there was no motion for change of venue before the court.[4] The trial court then denied the motion for reconsideration, but clarified its order to say that "[c]ounsel and their employees shall not make any statements to the press or general public concerning these cases with the exception of contacts with witnesses or experts material for their trials."[5]

Bassett, through attorney Farra, moved in this court for direct discretionary review of the trial court's order. This court's commissioner entered a ruling setting forth the law on the subject and describing the order as "problematic," but inviting further consideration by the trial court.

The parties appeared again before the trial court. The trial court indicated then that it did not interpret the commissioner's ruling to mean that its order was unconstitutional, but only that the parties should "[g]o back to the trial judge and find out why he did it."[6] It then noted that his courtroom seats between 250 and 300 people, and this was the first case in which "it was standing room only" with reporters, television cameras, and lights crowding the spectators and participants.[7] The trial court observed that the case involves two juveniles charged with

---

[1] Report of Proceedings (RP) (8/14/95) at 8-9.

[2] Clerk's Papers at 3, 5.

[3] Clerk's Papers at 5.

[4] RP (8/21/95) at 2-3.

[5] Clerk's Papers at 7.

[6] RP (10/16/95) at 2.

[7] RP (10/16/95) at 3.

a triple homicide, in a county with only one daily newspaper.[8] It said it had entered "a very narrow order" affecting only what counsel could say, not what the press could print,[9] and that the order was entered because the trial court did not want "what happened in . . . the SHEPPARD case. I did not wish to see the investigation on either side impaired. I did not wish to see gossip put out in the media . . . . I wished to preserve the right of the defendants . . . to a fair trial."[10] The trial court also said that it "weighed the alternatives and . . . took the narrow construction of telling the lawyers and their staffs . . . that there would be no dissemination of information or press conferences."[11] Finally, the trial court said there is "no doubt in my mind that when I issued this order that there was a reasonable likelihood that prejudicial news would affect the difficulty of empaneling an impartial jury and would tend to prevent a fair trial . . . and I will not change my ruling."[12] Upon receipt of the transcript of this hearing, this court's commissioner referred the motion for discretionary review to the court pursuant to RAP 17.2.

██ The trial court's order forbids future communications and is therefore a prior restraint on the exercise of free speech. *Soundgarden v. Eikenberry*, 123 Wn.2d 750, 764, 871 P.2d 1050, *cert. denied*, 115 S. Ct. 663 (1994); *State v. Coe*, 101 Wn.2d 364, 372-73, 679 P.2d 353 (1984). Prior restraints are presumptively unconstitutional. *Soundgarden*, 123 Wn.2d at 765; *Coe*, 101 Wn.2d at 373; *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976); *United States v. Salameh*, 992 F.2d 445, 447 (2d Cir. 1993). To overcome that presumption, a limitation placed on the speech of an attorney participating in judicial proceedings "should be no broader than necessary

---

[8]RP (10/16/95) at 4.

[9]RP (10/16/95) at 5.

[10]RP (10/16/95) at 7.

[11]RP (10/16/95) at 7.

[12]RP (10/16/95) at 10.

to protect the integrity of the judicial system and the defendant's right to a fair trial." *Salameh,* 992 F.2d at 447 (citing *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 111 S. Ct. 2720, 2744, 115 L. Ed. 2d 888 (1991)); *Sheppard v. Maxwell,* 384 U.S. 333, 361, 86 S. Ct. 1507, 16 L Ed. 2d 600 (1966) (court may proscribe extrajudicial statements by lawyers, parties, witnesses, and court officials to protect the defendant's right to a fair trial).

Under the First Amendment,[13] this means that no restriction is permissible unless the court finds there is at least "a 'reasonable likelihood' that pretrial publicity will prejudice a fair trial." *In re Dow Jones & Co., Inc.,* 842 F.2d 603, 610 (2d Cir.), *cert. denied,* 488 U.S. 946 (1988) (quoting *Sheppard,* 384 U.S. at 363); *see also Levine v. United States Dist. Court,* 764 F.2d 590, 595 (9th Cir. 1985), *cert. denied,* 476 U.S. 1158 (1986); *Chase v. Robson,* 435 F.2d 1059, 1061 (7th Cir. 1970) (both requiring a "serious and imminent threat" to the administration of justice). Also, the court must " 'explore whether other available remedies would effectively mitigate the prejudicial publicity,' and consider 'the effectiveness of the order in question' to ensure an impartial jury." *Salameh,* 992 F.2d at 447 (quoting *Dow Jones,* 842 F.2d at 612 n.1). Finally, the order must be narrowly tailored to proscribe only those extrajudicial statements that threaten the defendant's right to a fair trial or the administration of justice. *Levine,* 764 F.2d at 599; *In re San Juan Star Co.,* 662 F.2d 108, 117 (1st Cir. 1981); *Breiner v. Takao,* 73 Haw. 499, 835 P.2d 637, 641-42 (1992).

▮ The trial court here found that there is a reasonable likelihood that pretrial publicity will prejudice the defendant's right to a fair trial. In view of the nature of the offenses and the relatively small population of Grays Harbor County, pretrial publicity might well make it difficult to select a jury there. That one finding, however, is only part of the inquiry necessary to justify entry of an or-

---

[13]Mr. Bassett has not raised any state constitutional issues.

der, such as we have here. Pretrial publicity need not impair the defendant's right to a fair trial if the various alternative methods of dealing with the problem will be adequate to the task. Although the trial court said it had considered alternatives to the order it entered, it did not say what those alternatives might have been. Alternatives identified by other courts include searching voir dire, clear and emphatic cautionary instructions, change of venue, continuance of the trial date, and sequestration of the jury. *Levine,* 764 F.2d at 599-600; *Nebraska Press Ass'n,* 427 U.S. at 564; *Breiner,* 835 P.2d at 642.[14]

The trial court here did not consider change of venue as an alternative to its order, but said rather that venue was to be considered much later, as a separate matter.[15] Neither is there any indication that the trial court considered any of the other methods of dealing with publicity surrounding the trial. To the extent the trial court's remarks might be taken to indicate consideration of any of these, it seems that it believed them to be matters to be considered later, rather than alternatives to the gag order.

The trial court's order is also not narrowly tailored to restrain only those public statements that pose a "serious and imminent threat to a defendant's right to a fair trial and to the fair administration of justice." *Breiner,* 835 P.2d at 641 (citing *Levine,* 764 F.2d at 595). The Ninth Circuit in *Salameh* vacated a gag order because it was "not narrowly tailored; rather, it is a blanket prohibition that extends to any statements that 'have anything to do with this case' or that even '*may* have something to do with the case.'" *Salameh,* 992 F.2d at 447. The same is true here. The order bars counsel or their employees or staff from making *any statements about the case* to the press or the general public. Indeed, it is so broad that a statement that Bassett had pleaded not guilty, or that a pretrial hearing had been set for a particular date, would

---

[14]Mr. Bassett's codefendant successfully moved for selection of a jury from another county.

[15]RP (8/21/95) at 3.

come within the order's prohibition. The trial court did not find that counsel's making such statements to the media or the general public would prejudice Bassett's right to a fair trial or the fair administration of justice.

We appreciate the trial court's concerns regarding the publicity this case has received. Bassett and his codefendant are accused of murdering three people, one of them a child. The fact that these crimes were allegedly committed has received a substantial amount of publicity, particularly in southwest Washington, as did the arrest of Bassett and his codefendant. Although the upcoming proceedings may also generate considerable publicity, the trial court has, as we have observed above, several means that it must affirmatively consider to address the problems that may be caused by that publicity. Finally, it is worth noting that both the prosecutor and defense counsel are bound by RPC 3.6 to refrain from making extrajudicial statements that could materially prejudice the case.

Because there are several alternatives to the trial court's order as written, and there is no indication they will prove inadequate, the order was unnecessary. It is also not narrowly tailored to proscribe only those statements that threaten Bassett's right to a fair trial or the administration of justice. The trial court's order is therefore vacated.