**UNITED STATES of America, Appellee,**

v.

**Dennis PAPPAS, Defendant–Appellant.**

**No. 2097, Docket 96–1190.**

United States Court of Appeals, Second Circuit.

Argued June 7, 1996.

Decided Sept. 3, 1996.

Ronald L. Kuby, New York City (Daniel M. Perez, Eve S. Rosahn, Kunstler and Kuby, New York City, on the brief), for defendant-appellant.

Barbara Underwood, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Burton Ryan, Asst. U.S. Atty., Brooklyn, NY, on the brief), for appellee.

Before: NEWMAN, Chief Judge, JACOBS, Circuit Judge, and CHATIGNY,* District Judge.

JON O. NEWMAN, Chief Judge:

This appeal requires consideration of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3 (1994), which has infrequently been before the courts. Dennis J. Pappas appeals from the March 5, 1996, order of the District Court for the Eastern District of New York (Thomas C. Platt, Jr., Judge) imposing restrictions upon him and his defense counsel with respect to disclosure of classified information. The order was issued in the course of a pending criminal prosecution of Pappas. We conclude that part of the March 5 order is not appealable, but that the part prohibiting disclosure of information acquired prior to the litigation is appealable. We also conclude that CIPA does not apply to such previously acquired information, but that disclosure might nonetheless be prohibited under ordinary principles of contract law. We therefore dismiss in part, and remand for consideration of the contract issues.

## Background

Our presentation of the background of the pending dispute must necessarily be somewhat elliptical since the information the Government seeks to restrict relates to matters of national security. The record and the parties' briefs and appendices have been sub-

mitted to the Court under seal and in conformity with applicable regulations governing cases involving classified information. *See* Security Procedures Established Pursuant to Pub.L. 96–456, 94 Stat.2025 by the Chief Justice of the United States for the Protection of Classified Information, 18 U.S.C.A. app. 3, note (West 1985). We discuss only such facts and allegations as were aired by the parties during oral argument, which was held in open court.

Pappas and his wife are defendants in a criminal case pending in the District Court. Before being indicted, Pappas claimed that his prior activities on behalf of the Government entitled him at least to some favorable consideration, and since the indictment he has sought dismissal because of his prior activities. In response to the defendant's filing of notice of intent to reveal classified information, the Government, invoking CIPA, sought and obtained, *ex parte* and *in camera,* a protective order on January 4, 1996. The January 4 order establishes procedures to maintain the confidentiality of classified information and to permit defense counsel to have access to such information, subject to appropriate security clearances. It applies generally to classified information, without distinction as to whether the information was known to Pappas prior to the initiation of the criminal case or was disclosed to him in connection with the case.

Thereafter, Pappas met with reporters at the Metropolitan Correctional Center, and a New York City newspaper published two stories describing what was alleged to be Pappas's activities with the Government. On March 5, the District Court issued a supplemental protective order, which is the subject of the pending appeal. The March 5 order requires Pappas and his counsel to maintain the confidentiality of classified material "received or obtained by the defense whether before or after this order from any agent of the United States in connection with Dennis J. Pappas' alleged participation with any agency in question herein." The March 5 order also unseals some documents previous-

---

* Honorable Robert N. Chatigny, of the United States District Court for the District of Connecti-

cut, sitting by designation.

ly sealed and requires other documents to be sealed.

## Discussion

Pappas's appeal challenges the March 5 protective order primarily on the ground that it prohibits his public disclosure, by "comment, confirmation or denial," of any classified information covered by the order. He particularly objects to the disclosure prohibition to the extent that it prevents him from making public comment on matters already disclosed in a local newspaper. He also challenges the March 5 order's requirement that certain documents be sealed.

### I. Appealability

At the outset, we encounter the Government's contention that the March 5 protective order is not subject to an interlocutory appeal. The Government contends that the order is not "final" within the meaning of 28 U.S.C. § 1291, since it is explicitly subject to further CIPA procedures. The Government also deems the order not appealable as an injunction under 28 U.S.C. § 1292(a)(1) on the theory that CIPA, by explicitly permitting a Government appeal of a denial of protective order, 18 U.S.C. app. 3, § 7, impliedly "withholds" an appeal by the defendant from the granting of such an order. Appellant responds that we have entertained an appeal from a protective order barring discussion of a case, *see United States v. Salameh*, 992 F.2d 445 (2d Cir.1993), and have indicated that such orders are subject to some form of appellate consideration, *see United States v. Cutler*, 58 F.3d 825, 832–33 (2d Cir.1995); *In re Dow Jones & Co.*, 842 F.2d 603, 609 (2d Cir.), *cert. denied*, 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988). The Government replies that *Salameh* involved an order so clearly beyond constitutional limits as to be subject to mandamus under 28 U.S.C. § 1651.

■ *Salameh* did not discuss appealability, though it adjudicated what the enjoined party styled an "appeal," *Salameh*, 992 F.2d at 446, and the Court gave no indication that the appeal was being treated as a mandamus. Nevertheless, we doubt that *Salameh* intended to authorize an appeal of a protective order that does not contain the sweeping restraint at issue in that case. Protective orders that only regulate materials exchanged between the parties incident to litigation, like most discovery orders, are neither final orders, appealable under 28 U.S.C. § 1291, *see Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 162–63 (2d Cir.1992); *SEC v. Sloan*, 535 F.2d 679, 681 (2d Cir.1976), nor injunctions, appealable under 28 U.S.C. § 1292(a)(1). *See Taylor v. Board of Education*, 288 F.2d 600, 604 (2d Cir.) ("[N]ot every order containing words of restraint is a negative injunction within 28 U.S.C. § 1292(a)(1).") (citations omitted), *cert. denied*, 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961). In rare instances, they might raise issues available for review via a petition for mandamus. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 233 (2d Cir.1993); *Chase Manhattan*, 964 F.2d at 163–64.

■ To the extent that the March 5 order imposed restrictions on the parties' disclosure of materials exchanged in the course of the pending litigation, it is not subject to appeal. However, to the extent that the order prohibits Pappas from disclosure of information he acquired from the Government prior to the litigation, the order is not a typical protective order regulating discovery documents and should be appealable because of the breadth of its restraint. *See Salameh*, 992 F.2d at 446–47. The Government's contention that CIPA "withholds" appellate jurisdiction is unavailing. CIPA does not deny any appellate jurisdiction that otherwise exists. It simply extends to the Government, but not to the defendant, the opportunity for an interlocutory appeal of protective orders in circumstances where an appeal would not otherwise exist. 18 U.S.C. app. 3, § 7.

### II. The Merits

The issue available for appeal is whether the March 5 order may validly prohibit Pappas from disclosing classified information received from the Government prior to this litigation. Since the order is grounded on CIPA, we consider that source of authority first.

## A. CIPA Prohibition on Disclosure

■ CIPA "was designed to establish procedures to harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest." *United States v. Wilson,* 571 F.Supp. 1422, 1426 (S.D.N.Y.1983) (Weinfeld, J.). It sought to "minimize the problem of so-called graymail—a threat by the defendant to disclose classified information in the course of trial—by requiring a ruling on the admissibility of the classified information before trial." S.Rep. No. 823, 96th Cong., 2d Sess. 2, *reprinted in* 1980 U.S.S.C.A.N. 4294, 4295 ("*Senate Report*"); *see United States v. Wilson,* 721 F.2d 967, 975 (4th Cir.1983).

The risk of graymail can arise in various circumstances. Sometimes in pretrial discovery proceedings the "defendants and their counsel ... press for the release of sensitive classified information the threatened disclosure of which might force the government to drop the prosecution." *Senate Report* at 3, *reprinted in* 1980 U.S.S.C.A.N. at 4296 (statement of Asst. Att'y Gen. Heymann).[1] In other circumstances, "the government expects to disclose some classified items in presenting its case." *Id.* at 4, *reprinted in* 1980 U.S.S.C.A.N. at 4297 (statement of Asst. Att'y Gen. Heymann). In still other circumstances, the defendant has acquired classified information prior to the Government's initiation of a criminal prosecution, and the defendant can be expected to disclose such information in the course of presenting a defense, either at the pretrial or trial stage of the case. The information sought to be protected from disclosure in the pending case is in this third category.

CIPA establishes several procedures to minimize the risk of graymail and to adjust the competing interests of the Government in maintaining its secrets and of the defendant in mounting an effective defense. Several of these procedures are pertinent to the issues arising on this appeal. Section 5 requires the defendant to give notice to the Government and the court of an intent to disclose classified information "in connection with any trial or pretrial proceeding." It further provides that a defendant shall not disclose classified information "in connection with a trial or pretrial proceeding" until the required notice has been given and the Government has had a reasonable opportunity to invoke the protections available under section 6.

Subsection 6(a) authorizes the Government to request, and obliges the court to make, a pretrial determination of the use, relevance, or admissibility of classified information that would otherwise be determined at trial. Subsection 6(c) provides that upon the court's determination that disclosure is authorized, the Government may apply for a court order to avoid such disclosure either by admitting relevant facts that the information to be disclosed would tend to prove or by providing the defendant with a summary of such information. Subsection 6(e)(1) provides that if the court denies the Government's subsection 6(c) application, "the court shall order that the defendant not disclose" such information, and subsection 6(e)(2) provides that whenever a defendant is prohibited from disclosure by a subsection 6(e)(1) order, the court shall dismiss the charges, or, if such action would not serve the interests of justice, take alternative, remedial steps.

Section 3 provides that, on the Government's motion, the court must issue a protective order to guard against the disclosure of any classified information "disclosed by the United States to any defendant in any criminal case."

CIPA thus contemplates three circumstances in which a defendant may be prohibited from disclosing classified information. One is during the pendency of a Government application for a section 6 pretrial ruling and remedy. A second is following a court's ruling that the Government may not use alternatives in lieu of disclosure and must therefore accept dismissal (or sometimes lesser remedies) as the price of resisting disclosure.

---

1. Asst. Att'y Gen. Heymann's testimony, quoted in the Senate Report, was presented at a prior hearing of a House of Representatives subcommittee. *See Graymail Legislation: Hearings Before the Subcomm. on Legislation of the House Permanent Select Comm. on Intelligence,* 96th Cong., 1st Sess. 4–5 (1979).

A third is following the court's issuance of a protective order.

The third circumstance explicitly limits the scope of the prohibition on the defendant's disclosure to "classified information disclosed by the United States to any defendant in any criminal case." That prohibition appears to have no application to Pappas since the information at issue was not disclosed to him "in" a criminal case. However, it is arguable that the protective order authorized by section 3 can prevent the defendant from disclosing in the criminal case classified information that was previously acquired.[2] The prohibitions permitted in the first two circumstances are also ambiguous as to whether they apply only to information disclosed to a defendant in a criminal case or, in addition, apply to information that the defendant previously acquired.

Fortunately, the legislative history of CIPA makes it clear exactly how Congress intended the disclosure prohibitions to apply. The Senate Report, discussing a section 3 protective order, states:

> If the defendant already had classified materials in his possession, such a protective order can prevent disclosure in connection with the trial but it cannot be expected to reach disclosure outside the trials. Federal criminal statutes apply to such disclosures.

*Senate Report* at 6, *reprinted in* 1980 U.S.C.C.A.N. at 4299. Thus, though the Senate Report understood that a section 3 protective order can apply to the defendant's previously acquired information, the order may prohibit disclosure only "in connection with the trial" and not outside the trial.

The understanding of the relevant committees of the House of Representatives is even more emphatic. The most detailed House report is that of the Permanent Select Committee on Intelligence. *See* H.R.Rep. No. 831, 96th Cong., 2d Sess., pt. 1 (1980) ("*House Report*").[3] The House Report considered first the prohibition on disclosure following the defendant's notice of intent to disclose. This provision, which became section 5 of CIPA, was section 102(a)(1) of H.R. 4736. The House Report states:

> The Committee wishes to emphasize that neither the language of section 102(a)(1) concerning the prohibition on disclosure (nor the court order provisions of sections 102(d) and 105(a)) are in any way intended to be the basis for any proposed expansion or reinterpretation of the law of prior restraint, and section 102(a)(1) is not, in fact, intended to be a prior restraint provision at all.... The intent is to leave the law of prior restraint undisturbed. It has been held that *the trial court has broad discretion in prohibiting disclosure by the defendant of information obtained by the defendant through use of the court's processes, such as through discovery.* A prohibition in this area can extend to out-of-court disclosures and to post-trial disclosures. *The court's authority is narrowed where the information at issue was in the possession of the defendant before the trial began and was not obtained by the defendant with the aid of the court. In this area, the court's authority to prohibit disclosure extends only to a regulation of what may be said or introduced in the trial context.*

*House Report* at 13–14 (footnote omitted) (emphasis added). Then the House Report discussed the prohibition on disclosure that follows a court's rejection of a Government request for alternative procedures to avoid disclosure. This provision, which became section 6(e) of CIPA, was section 105(a) of H.R. 4736. The House Report emphasized:

---

2. Section 3 could apply to previously acquired information if the provision was construed, in a somewhat strained manner, to mean that its coverage includes information disclosed at any time to a person who subsequently becomes a defendant in a criminal case.

3. The House bill, H.R. 4736, was jointly referred to both the Permanent Select Committee on Intelligence and the Committee on the Judiciary.

The Judiciary Committee's report states, "The Judiciary Committee's endorsement of H.R. 4736 reflects its judgment that the Intelligence Committee weighed carefully the competing interests at stake in this legislation and achieved the proper balance between them. The Committee felt no need to independently scrutinize every provision of the bill." *See* H.R.Rep. No. 831, 96th Cong., 2d Sess. pt. 2, at 5 (1980).

As the discussion accompanying section 102(a) notes, generally, such order may only extend to disclosure in connection with the trial if it pertains to classified information not obtained by the defendant through the court's processes.

*House Report* at 21 n. 17.

Finally, the House Report discussed the scope of the protective order authorized by section 109(a) of H.R. 4736, which became section 3 of CIPA:

> *Section 109(a)* directs the court, upon motion of the government, to issue an order for the protection against unauthorized disclosure of classified information disclosed by the government to the defendant. The provision is intended to codify the well established practice, based on the inherent authority of federal courts, to issue protective orders. Such orders are usually associated with the discovery process. Subsection (a) makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution, e.g., Brady and Jencks material.

*House Report* at 26.

■ Thus, the scope of CIPA prohibitions on a defendant's disclosure of classified information may be summarized as follows: information conveyed by the Government to the defendant in the course of pretrial discovery or the presentation of the Government's case may be prohibited from disclosure, including public disclosure outside the courtroom, but information acquired by the defendant prior to the criminal prosecution may be prohibited from disclosure only "in connection with the trial" and not outside the trial. Since Pappas acquired the information at issue before the trial, CIPA does not authorize the District Court's order to the extent that the order prohibits public disclosure outside the court proceedings. Whatever protection the Government is entitled to obtain against such disclosure must be found in sources of law other than CIPA.

B.   Contractual Prohibition on Disclosure

■ Though the prohibition of public disclosure of previously acquired information

may not be supported by CIPA, it may nonetheless be supported under ordinary principles of contract law. Preliminarily, we note that the contract issues are governed by federal common law. Whatever the role of state law might be when the United States contracts in a purely proprietary capacity, there can be no doubt that a contract for services on matters involving national security is governed by federal law. *See Clearfield Trust Co. v. United States,* 318 U.S. 363, 366, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943) (commercial paper of the United States); *United States v. Snepp,* 595 F.2d 926, 936 n. 10 (4th Cir.1979) (contract for CIA employment), *aff'd with apparent approval of this point,* 444 U.S. 507, 514 n. 10, 100 S.Ct. 763, 768 n. 10, 62 L.Ed.2d 704 (1980); *see generally* Paul M. Bator *et al., Hart & Wechsler's The Federal Courts and the Federal System* 863–69 (3d ed. 1988) (discussing choice of law in federal government litigation). Moreover, on such a topic, uniform federal law is appropriate, though such law may be informed by applicable general principles of state law. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979) ("Undoubtedly, federal programs that 'by their nature are and must be uniform in character throughout the Nation' necessitate the formulation of controlling federal rules." (quoting *United States v. Yazell,* 382 U.S. 341, 354, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966))).

■ Both the Government and Pappas allege that some contractual arrangement was formed between them, though the terms of the agreement are in dispute. They agree, however, that Pappas was told not to disclose his activities with the Government to anyone, and the Government contends that he accepted that instruction as a condition of his subsequent dealings with the Government. It is not clear at this point whether those dealings involved actual employment or only discussions to consider employment, although even the latter might well give rise to enforceable obligations. The Government is entitled to enforce its agreements to maintain the confidentiality of classified information. *See Snepp,* 444 U.S. at 510–16, 100 S.Ct. at 765–69; *United States v. Marchetti,* 466 F.2d

1309, 1316–17 (4th Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972).

■ Pappas contends that whatever contractual restraint may be applicable cannot prohibit his disclosure of information that he alleges he has already made public. Though information in the public domain would normally not be subject to a restraint on disclosure, *see Snepp,* 444 U.S. at 513 n. 8, 100 S.Ct. at 767 n. 8; *Marchetti,* 466 F.2d at 1317, that principle does not benefit Pappas for two related reasons. First, he contends that it was his own disclosure that made the information public. Second, such self-help does not free him of contractual restraint in circumstances where risks to legitimate interests of the Government might arise from repeated disclosure or from the intended or even unintended amplification that is likely to accompany such disclosure.

Since the District Court made no findings with respect to the Government's contractual claim to prohibit disclosure, the matter must be remanded for further proceedings to determine what contractual restrictions bind Pappas and whether, in the circumstances of this case, those restrictions, if established, entitle the Government to an order prohibiting Pappas from disclosure outside the trial context.[4] Though the existence of the District Court's prohibition on such disclosure constitutes a prior restraint, we will maintain it in place pending the proceedings on remand since Pappas's own affidavit strongly supports the Government's contractual claim and since Pappas affirmatively alleges that the information he wishes to discuss has already been made public. As noted, there remain governmental interests in preventing further or even repeated disclosure and slight public interest in mere repetition.

Accordingly, the appeal is dismissed to the extent that it challenges restrictions on information exchanged during the pending litigation. To the extent that the appeal challenges the prohibition on disclosure of previously acquired information, the case is remanded for further proceedings consistent with this opinion.

---

4. Since the parties have not briefed the issue on this appeal, we leave it to the District Court to consider whether a prohibition grounded on a contract claim may be entered within the pend-

ing criminal case or requires initiation of a civil suit, referrable to the same district judge as a related case.