**WOODWARD GOVERNOR CO.,**
**Plaintiff–Appellant,**

v.

**CURTISS–WRIGHT FLIGHT SYSTEMS,**
**INC., Defendant–Appellee.**

**Docket No. 98–7910**

United States Court of Appeals,
Second Circuit.

Argued Oct. 21, 1998.

Decided Jan. 8, 1999.

---

Christopher M. Curran, White & Case, Washington, D.C. (J. Christian Word, of counsel), for Appellant.

Steven R. Humphrey, Robinson & Cole LLP, Hartford, CT (Craig A. Raabe, Bradford S. Babbitt, of counsel), for Appellee.

Before: WALKER and McLAUGHLIN, Circuit Judges, and PRESKA, District Judge.*

McLAUGHLIN, Circuit Judge:

## BACKGROUND

In 1990, the United States contracted with the Lockheed Corporation ("Lockheed"), for the design and manufacture of a new fighter plane, the F–22 "Raptor." As is typical in such cases, a series of subcontracts ensued. Lockheed subcontracted the weapons bay doors to Curtiss–Wright Flight Systems, Inc. ("Curtiss–Wright"). Curtiss–Wright, in turn, chose the plaintiff, Woodward Governor Co. ("Woodward"), to produce "test stands" that would allow the bay doors to be tested before they were actually installed in the F–22. It is this latter subcontract that generated this litigation.

The subcontract between Curtiss–Wright and Woodward set a price of $1.5 million for the test stands. It provided that the subcontract was governed by New Jersey law unless New Jersey law was "not dispositive," in which case the "federal common law of government contracts" governed. The subcontract also contained provisions relating to the rights and responsibilities of the parties vis à vis the federal government.

In January 1994, Woodward began work on the test stands. The work quickly fell behind schedule, however, because Curtiss–Wright had not yet finished designing the weapons bay doors. In late 1995, Curtiss–Wright ordered Woodward to bring the unfinished test stands to Curtiss–Wright's facility in New Jersey, even though under the subcontract delivery of the test stands by Woodward to Curtiss–Wright was not yet due. To meet this demand, Woodward was forced to transport its materials and employees to New Jersey to continue work on the test stands at Curtiss–Wright's facility. This, of course, caused further delay and added expense.

Throughout 1995, Curtiss–Wright remained unable to provide Woodward with prototypes of the weapons bay doors. In exasperation, Woodward demanded that Curtiss–Wright provide the weapons bay doors by January 1996, at the latest. Curtiss–Wright responded that it could not provide the bay doors until May 1996. In the end, Curtiss–Wright never provided Woodward with a prototype.

By August 2, 1996, Curtiss–Wright had paid Woodward all the progress payments called for by the subcontract, with only the last $317,000 progress payment still due.

* The Honorable Loretta A. Preska of the United States District Court for the Southern District of New York, sitting by designation.

However, as a result of the substantial delays and the need to work on the test stands at Curtiss–Wright's facility, Woodward concluded that construction of the test stands would cost substantially more than the $1.5 million originally agreed upon. Woodward thus sought to re-negotiate the terms of the subcontract. After a flurry of correspondence about who would pay for the cost over-runs, Curtiss–Wright broke off the negotiations by informing Woodward that it considered Woodward to have defaulted on the subcontract. Curtiss–Wright then engaged another company to complete construction of the test stands.

In December 1997, Woodward filed suit in the United States District Court for the District of Connecticut (Covello, *Judge* ), seeking damages and declaratory relief for Curtiss–Wright's alleged breach of the subcontract. Subject matter jurisdiction was premised on a federal question under 28 U.S.C. § 1331. It is undisputed that there is no diversity under 28 U.S.C. § 1332.

Curtiss–Wright moved to dismiss the complaint, arguing that there is no federal question because none of Woodward's claims is governed by federal law. Woodward countered that federal common law governs because its claims arise out of the breach of a subcontract relating to defense procurement. Judge Covello concluded that federal common law does not apply and dismissed the complaint under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

Woodward now appeals, advancing three main arguments for its position: (1) the nature of the subcontract requires that this case be governed by federal common law; (2) the parties elected to be governed by federal common law; and (3) Woodward's claim for equitable relief under federal law requires the application of federal common law.

## DISCUSSION

■ The sole issue is whether the district court had subject matter jurisdiction. We review the factual findings of the district court on a motion to dismiss for lack of subject matter jurisdiction for clear error, while we review the district court's legal conclusions *de novo*. *See Wake v. United States*, 89 F.3d 53, 57 (2d Cir.1996). We conclude that Curtiss–Wright is correct, and federal common law does not apply in this breach of contract suit. Because there is no other basis for federal subject matter jurisdiction, we affirm Judge Covello's dismissal of the complaint.

■ It is beyond dispute that if federal common law governs a case, that case presents a federal question within the subject matter jurisdiction of the federal courts, just as if the case were governed by a federal statute. *See* 28 U.S.C. § 1331; *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

■ Although "there is no federal *general* common law," federal common law sometimes controls certain issues and certain types of cases. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (emphasis added). For example, questions about privilege in federal question cases are resolved by the federal common law. *See* Fed.R.Evid. 501. Similarly, suits involving maritime claims are governed by the venerable federal common law of admiralty. *See, e.g., Southern Pac. Co. v. Jensen*, 244 U.S. 205, 215, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

■ However, the various bailiwicks of federal common law are limited in number. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) ("cases in which judicial creation of a special federal rule would be justified ... are ... 'few and restricted' " (quoting *Wheeldin v. Wheeler*, 373 U.S. 647, 651, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963))). Woodward asserts that this is one of those rare cases where federal common law controls, because it involves a subcontract on a government project that relates to national defense.

■ In recent years, the Supreme Court has sought to clarify when federal common law enters the picture. *See Atherton v. FDIC*, 519 U.S. 213, 117 S.Ct. 666, 670, 136 L.Ed.2d 656 (1997); *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504–07, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988); *but see* 19 Charles Allan Wright, et al., *Federal*

*Practice and Procedure* § 4514, at 458–59 (1996) (Court's attitude produces "an anomaly," and there are no bright-line rules). The Court has explained that, as a threshold matter, a case must implicate "uniquely federal interests" for federal common law to apply. *Boyle*, 487 U.S. at 504, 108 S.Ct. 2510 (internal quotation marks omitted). As Justice Scalia explained in *Boyle*, such interests arise only in a few areas, such as: (1) the obligations to, and rights of, the United States under its contracts; (2) the liability of federal officers for official acts; and (3) civil liabilities arising out of federal procurement contracts relating to national defense. *See id.* At 504–06; Erwin Chemerinsky, *Federal Jurisdiction* §§ 6.2 at 337–52 (2d ed.1994).

▆ Even when "uniquely federal interests" are implicated, federal common law applies only where there is a "significant conflict between some federal policy or interest and the use of state law." *O'Melveny*, 512 U.S. at 87, 114 S.Ct. 2048; *see Boyle*, 487 U.S. at 504, 108 S.Ct. 2510; *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728–29, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). A "significant conflict" of the type required by these cases occurs when the application of state law would run counter to a federal policy or interest. *See O'Melveny*, 512 U.S. at 87–88, 114 S.Ct. 2048; *Pescatore v. Pan American World Airways, Inc.*, 97 F.3d 1, 11 (2d Cir. 1996). In the absence of a significant conflict, "a mere federal interest in uniformity is insufficient to justify displacing state law in favor of a federal common law rule." *B.F. Goodrich v. Betkoski*, 112 F.3d 88, 90 (2d Cir.1997) (per curiam), *cert. denied sub nom. Zollo Drum Co. v. B.F. Goodrich Co.*, ――― U.S. ―――, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998); *see O'Melveny*, 512 U.S. at 88, 114 S.Ct. 2048. Finally, an actual, significant conflict between a federal interest and state law must be "specifically shown," and not generally alleged. *Atherton*, 117 S.Ct. at 670; *see O'Melveny*, 512 U.S. at 87–88, 114 S.Ct. 2048.

▆ Commentators have noted that in disputes between two private parties, federal courts since *O'Melveny* have shown a marked reluctance to displace state law by finding a significant conflict with a federal interest.

*See, e.g.*, 19 Wright § 4514, at 458–59 & nn. 22–23; Chemerinsky, § 6.2.3, at 348–49. Thus, a plaintiff seeking to apply federal common law where the United States is not even a party faces a substantial burden in trying to demonstrate an actual, significant conflict between state law and a federal interest. *See O'Melveny*, 512 U.S. at 88, 114 S.Ct. 2048; *B.F. Goodrich*, 112 F.3d at 90.

Woodward accepts these principles in the abstract, but argues that federal common law applies here because: (1) the subcontract between Woodward and Curtiss–Wright relates to national defense, which Woodward asserts is an issue of "uniquely federal interest"; and (2) application of New Jersey law would conflict with the federal interest in having a uniform legal standard apply to all its defense procurement contracts.

### A. Issue of Uniquely Federal Interest

Woodward's position—that this case involves an issue of uniquely federal interest—is not without some merit. Several cases do indeed suggest that federal procurement contracts relating to national security implicate uniquely federal interests. *See, e.g., Boyle*, 487 U.S. at 507, 108 S.Ct. 2510; *United States v. Allegheny County*, 322 U.S. 174, 182, 64 S.Ct. 908, 88 L.Ed. 1209 (1944). The subcontract here bears a connection to a government contract for the design and manufacture of a fighter plane; it would seem to meet the first requirement for application of federal common law. *See Pescatore*, 97 F.3d at 10; *see also Boyle*, 487 U.S. at 507, 108 S.Ct. 2510. Upon closer scrutiny, however, it becomes apparent that this subcontract is too far removed from issues of uniquely federal concern to call for the application of federal common law.

Woodward interprets our decision in *United States v. Pappas*, 94 F.3d 795, 801 (2d Cir.1996), as holding that any contract that bears any relation to national security is governed by federal common law. *Pappas*, however, cannot bear the weight of so sweeping a proposition. *Pappas* involved an attempt by the United States to enforce a provision in Pappas' employment contract prohibiting him from disclosing secrets that he learned while working for the govern-

ment. We held that such a contract, which directly affected national security because it related to the disclosure of state secrets, was governed by federal common law. *See id.* at 801–02.

*Pappas* is inapposite because: (1) the United States *itself* was trying to enforce the contract in *Pappas;* and (2) the contract in *Pappas* related *directly* to national security. In this case, the United States has no immediate interest in Woodward's dispute with Curtiss–Wright, and there is no allegation that the United States could incur liability. Indeed, Curtiss–Wright has admitted that it is estopped from attempting to recover· any damages in this suit from the government. Moreover, Woodward has not alleged that national security would be imperiled if it is not paid for its work on the test stands. Thus, the sort of direct federal interest that permeated *Pappas* is absent here.

Woodward also relies on a smattering of cases suggesting that all subcontracts relating to defense procurement contracts are governed by federal common law. Woodward relies heavily upon *New SD, Inc. v. Rockwell Int'l Corp.,* 79 F.3d 953 (9th Cir. 1996), where the Ninth Circuit so held.

■ We find *New SD* unpersuasive for several reasons. First, the *New SD* court itself conceded that its holding was contrary to "a number of forceful arguments" and authority from other circuits, but felt bound by its earlier decision in *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.,* 292 F.2d 640 (9th Cir.1961). *See New SD,* 79 F.3d at 954–55. Moreover, the reasoning behind *New SD* is, in our opinion, flawed. While there is no question that contracts relating *directly* to government liability for procurement decisions are governed by federal common law, the issue gets muddier as the contract gets further removed from the government. A subcontract for the provision of a toilet seat for a bomber, probably three or four subcontracts removed from privity with the federal government, would not seem to concern an issue of uniquely federal interest. However, the *New SD* analysis provides no touchstone to distinguish between the contract for the bomber itself and the subcontract for the toilet seat. In this case, where

the test stands do not become a part of the F–22, but are only a tool to help Curtiss–Wright perfect the bay doors, the *New SD* analysis is especially unhelpful.

■ The Seventh Circuit's decision in *Northrop Corp. v. AIL Sys. Inc.,* 959 F.2d 1424 (7th Cir.1992), furnishes a more satisfying analysis of when federal common law governs contracts that relate to federal defense procurement. In *Northrop,* the court resisted the temptation to create a bright-line rule applying federal common law to *all* government procurement contracts relating to national defense, principally because so facile a rule would conflict with *Boyle. See Northrop,* 959 F.2d at 1427. Rather, the Seventh Circuit explained that a contractual dispute between two potential subcontractors on a government procurement contract does not implicate a uniquely federal interest unless the United States is exposed to some potential loss. *See id.*

*Boyle* held that federal common law should apply to prevent *government liability* arising out of procurement activities. *See Boyle,* 487 U.S. at 507, 108 S.Ct. 2510; *Northrop,* 959 F.2d at 1427. Moreover, the Supreme Court's decision in *O'Melveny* (which expressed a distinct distaste for displacing state law) confirms that the Seventh Circuit's reluctance in *Northrop* to apply federal common law is the better approach. Because the Woodward—CurtissWright "'litigation is among private parties and no substantial rights or duties of the United States hinge on its outcome,'" application of federal common law is particularly inappropriate. *Northrop,* 959 F.2d at 1428 (quoting *Miree v. DeKalb County,* 433 U.S. 25, 31, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)); *see Boyle,* 487 U.S. at 507, 108 S.Ct. 2510.

## B. *Conflict Between Federal Interest and State Law*

Even if Woodward were correct that its dispute with Curtiss–Wright implicates an issue of uniquely federal interest, federal common law still would not apply here because Woodward cannot show that state law conflicts with a significant federal policy or interest.

The only federal interest that Woodward claims conflicts with the application of New Jersey law is the purported need for a uniform rule of decision in government procurement cases. However, in numerous cases, courts have rejected similar attempts to rely on vague assertions about the need for uniformity. *See, e.g., Atherton,* 117 S.Ct. at 671; *O'Melveny,* 512 U.S. at 88, 114 S.Ct. 2048; *Pescatore,* 97 F.3d at 11. Indeed, the Supreme Court has specifically held that "generalized pleas for uniformity" do not sufficiently allege an actual conflict between state law and a federal interest. *Kimbell Foods,* 440 U.S. at 730, 99 S.Ct. 1448. We have followed the same rule. *See B.F. Goodrich,* 112 F.3d at 91 (reliance on federal interest in uniformity insufficient absent actual, substantial conflict with state law).

Woodward fails to make a specific showing that New Jersey law conflicts with the interest in uniformity. *See Atherton,* 117 S.Ct. at 671; *Pescatore,* 97 F.3d at 10. Indeed, Woodward makes no allegations as to how New Jersey law would decide this case, and fails to explain why a federal common law rule would or should differ from New Jersey law. *See Pescatore,* 97 F.3d at 10.

In addition, Woodward's argument lacks merit because, ironically, application of state law in this case might actually *further* the federal interest in uniformity. This breach of contract action, which relates to a contract for the production and sale of goods worth more than $500, would be governed by the Uniform Commercial Code ("U.C.C."). *See* N.J.Rev.Stat. §§ 12A:2–101 *et seq.* (1997). As its name suggests, the *Uniform* Commercial Code provides *uniform* rules of decision in contract cases. Thus, even if the federal interest in uniformity could support the application of federal common law, New Jersey law does not conflict with, and, indeed, actually promotes, that interest. *See* I E. Allan Farnsworth, *Farnsworth on Contracts* § 1.9, at 35 (noting that U.C.C. provisions on sales have been adopted in every state but Louisiana).

### C. *Choice of Law Clause in the Subcontract*

██ Woodward also contends that the choice of law provision in the subcontract

calls for the application of federal common law. We disagree.

The subcontract contains two provisions relating to choice of law. Article 34 states that "[t]his Purchase Order shall be governed by and construed in accordance with the law (exclusive of the law with respect to the conflict of laws) of the State of New Jersey." Later, in the standard terms and conditions that the parties incorporated in the subcontract, it provides that "[t]his Order shall be construed and interpreted according to the law of the State of New Jersey ..., [and if] the law of the State of New Jersey is not dispositive, the federal common law of government contracts shall govern."

Woodward maintains that New Jersey law is not dispositive in this case, and, accordingly, the subcontract calls for the application of federal common law. However, Woodward fails to explain *why* New Jersey law is not dispositive in this gardenvariety breach of contract case. As explained above, the U.C.C. governs this dispute, and Woodward fails to make clear how the U.C.C. is not dispositive.

Woodward cites *Danis Indus. Corp. v. Fernald Evntl. Restoration Mgt. Corp.,* 947 F.Supp. 323 (S.D.Ohio 1996), for its conclusion that federal common law applies in this case. *Danis,* however, held only that parties *may* choose federal common law in some circumstances. *See id.* at 326 (noting that contract unambiguously stated that federal common law governed). We need not express a view as to the soundness of this holding. In this case, the issue is not whether the parties *may* choose federal common law, but whether they *did* choose federal common law. This issue was not disputed in *Danis,* and *Danis* therefore is irrelevant here. *See id.* As Woodward presents no reason to disregard the subcontract's plain meaning, we conclude that the subcontract provides that New Jersey law applies to this suit.

### D. *Claim for Equitable Adjustment under Federal Common Law*

Woodward's complaint also asserted a cause of action for an "equitable adjust-

ment"—essentially, restitution for unjust enrichment—under federal common law. Woodward maintains that this claim was sufficient to support federal question jurisdiction.

 A plaintiff cannot establish federal question jurisdiction simply by asserting equitable rights under the federal common law. A "vague formulation of equitable rights alone will not confer subject matter jurisdiction." *C.H. Sanders, Co. v. BHAP Hous. Dev. Fund, Co.*, 903 F.2d 114, 118 (2d Cir. 1990).

In *C.H. Sanders,* we found that subject matter jurisdiction could be predicated upon an equitable claim for restitution against the United States Department of Housing and Urban Development ("HUD"). However, the circumstances were far different in that case. In the first place, the plaintiff in *C.H. Sanders* was suing an instrumentality of the federal government, thereby making application of federal common law more appropriate than in this case. *See* Chemerinsky § 6.2.3, at 348–49 (courts reluctant to apply federal common law in suits between two private parties). More importantly, the equitable rights asserted by the plaintiff in *CH Sanders* arose out of the application of a federal statute that HUD had allegedly violated. We found subject matter jurisdiction because the equitable claim alleged by the plaintiff was based on an alleged violation of a federal statute. *See C.H. Sanders,* 903 F.2d at 118 ("availability [of an equitable adjustment] is part of the federal common law relating to *statutory violations* " (emphasis added)). Woodward's claim is not based on the violation of any federal statute. Rather, it is premised on Curtiss–Wright's alleged unjust enrichment in relation to the test stands.

We note also that Woodward delivered the test stands to, and worked on them in, Curtiss–Wright's New Jersey facility. New Jersey law provides an equitable remedy for unjust enrichment. *See St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co. of N. Am.*, 32 N.J. 17, 22, 158 A.2d 825 (1960). Therefore, to the extent that federal common law would provide Woodward with an equitable remedy, New Jersey would provide the same remedy. Thus, no conflict between state law and a federal interest in providing restitution is present in this case, and application of federal common law is inappropriate. *See O'Melveny,* 512 U.S. at 87–88, 114 S.Ct. 2048; *Pescatore,* 97 F.3d at 10.

## CONCLUSION

Federal common law does not apply to Woodward's claims, and there is no other basis for federal subject matter jurisdiction in this case. Accordingly, Judge Covello properly dismissed Woodward's complaint under Fed.R.Civ.P. 12(b)(1), and the judgment of the district court is hereby AFFIRMED.