**L–3 COMMUNICATIONS CORPORATION, et al., Plaintiffs,**

v.

**SERCO INC., Defendant.**

**Case No. 1:14–cv–619–GBL–JFA.**

United States District Court, E.D. Virginia, Alexandria Division.

Signed Aug. 19, 2014.

Benjamin G. Chew, Nigel L. Wilkinson, Pillsbury Winthrop Shaw Pittman LLP, Washington, DC, for Plaintiffs.

John A.C. Keith, Laurie Lea Proctor, Blankingship & Keith PC, Fairfax, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

GERALD BRUCE LEE, District Judge.

THIS MATTER is before the Court on Plaintiffs L–3 Communications Corporation and L–3 Applied Technologies, Inc.'s (collectively "L–3") Motion to Remand. (Doc. 17.) This case concerns a dispute between Defendant Serco, a government contractor, and Plaintiffs L–3, subcontractors for Serco, where L–3 alleges Serco unlawfully interfered with L–3's ability to secure future task orders and other subcontracts. The issue before the Court is whether the Court has subject-matter jurisdiction pursuant to either of two statutes: 1) under 28 U.S.C. § 1331 if a "substantial and disputed" federal question is present or if a "unique federal interest" is implicated; or 2) under Federal Officer Removal Statute 28 U.S.C. § 1442(a)(1), if Defendant was "acting under" color of a

federal officer and has a "plausible colorable defense."

The Court holds that it does not have subject-matter jurisdiction over this dispute. Jurisdiction under § 1331 is not proper for two reasons. First, the Court does not find a "substantial and disputed" question is present and the Court is not required to interpret disputed federal law in this case, or answer a "nearly pure legal question" in this case. Second, although this dispute originates from government contract work, it is no more than a disagreement between two private contractors and therefore it does not invoke a "unique federal interest." Likewise, jurisdiction is not proper under § 1442(a)(1) for three reasons. First, Defendant was not "acting under" a federal officer as required by the statute because Defendant had nearly full discretion over subcontractor award decisions. Second, Defendant cannot successfully argue that Plaintiffs' claims arise as a consequence of Defendant carrying out the directives of a federal officer. Third, although Defendant argues it has a "colorable federal defense," its alleged Federal Tort Claims Act defense undermines the argument that it was "acting under" a federal officer, and therefore, Defendant does not satisfy all of the elements required for § 1442(a)(1) removal.

Accordingly, the Court GRANTS Plaintiffs' Motion to Remand. (Doc. 17.)

## I. BACKGROUND

This case is before the Court on Plaintiffs L-3 Communications Corporation and L-3 Applied Technologies, Inc.'s Motion to Remand to the Circuit Court of Fairfax County. (Doc. 17.) Plaintiffs filed suit against Defendant Serco alleging tortious interference with Plaintiffs' confidentiality contracts with former employees, tortious interference with a contract or business expectancy, civil conspiracy, and statutory business conspiracy pursuant to Va.Code § 18.2–499, 500. (Doc. 1–9, at 17–22.)

Plaintiffs are in the business of providing various engineering testing and maintenance services for military and government applications. (Doc. 1–9.) Defendant is a prime contractor under the United States Air Force Space Command ("Air Force") tasked with managing the testing and upgrading of designated U.S. Military Air Force sites around the world in order to protect them from high-altitude electromagnetic pulse ("HEMP") events, such as nuclear explosions. (Doc. 1, at 3.) Defendant does not have the technical expertise and capability of providing such HEMP-related testing and maintenance required under its contract with the Air Force, but rather hires subcontractors to perform the specific testing. (Doc. 1–9.)

For a number of years leading up to 2008, Plaintiffs were repeatedly awarded subcontracts from Defendant because Plaintiffs had developed proprietary and specialized equipment and software for performing HEMP-testing services. (Doc. 1–9, at 6.) In preparing proposals for Defendant, Plaintiffs created custom spreadsheets that included L-3's labor categories, labor rates, estimated hours for specific projects at specific sites, overhead rates, and other related costs for the project. Rather than using General Services Administration approved labor rate categories, Plaintiffs developed their own proprietary specialized labor rates and categories (*Id.* at 10.) Plaintiffs had their rates and categories audited and accepted by the Defense Contract Audit Agency ("DCAA") which provided Defendant with assurances that the rates and skill-sets attributed to Plaintiffs' labor categories would be accepted by the government in the event of an audit. (*Id.*)

Plaintiffs allege that Defendant secretly worked with Plaintiffs' current and former

employees to steal Plaintiffs' technology, business methods, and employees in order to create a new enterprise, Jaxon Engineering & Maintenance ("Jaxon") to which it would grant future HEMP sub-contracts and task orders. (Doc. 1–9.) Plaintiffs allege Defendant participated in and encouraged such conduct even though it knew Plaintiffs' employees were bound by employment confidentiality agreements not to disclose Plaintiffs' confidential proprietary and trade secret information. (*Id.*) Further, Plaintiffs allege Defendant abused its relationship with the Air Force to wrongfully seek inventory, materials, and equipment from L–3 to transfer to Jaxon for Jaxon's use. (Doc. 41, at 19.)

Plaintiffs filed the present lawsuit in the Circuit Court of Fairfax County on May 1, 2014. (Doc. 1–9.) Defendant removed this action to the Eastern District of Virginia on May 27, 2014. (Doc. 1.) Plaintiffs filed a Motion to Remand (Doc. 17) and their brief in support of remand (Doc. 18) on June 6, 2014. Defendant filed its Opposition (Doc. 36) on June 20, 2014, to which Plaintiffs provided their reply on June 26, 2014. (Doc. 41.) On August 8, 2014, the Court heard oral argument on the Motion to Remand and issued an oral ruling granting the Motion for the reasons stated in open court. (Doc. 50.)

## II. *DISCUSSION*

### A. Standards of Review

■■■■■ Federal Courts have limited jurisdiction with specific jurisdictional requirements and limitations. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). When a party seeks to adjudicate a matter in federal court, the party must demonstrate that the federal court has jurisdiction over the matter. *Id.* Accordingly, the party seeking removal bears the burden of establishing federal jurisdic-

tion. *See, e.g., Mulcahey v. Columbia Organic Chem. Co.,* 29 F.3d 148, 151 (4th Cir.1994) (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* (citations omitted). Moreover, "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 425 (4th Cir. 1999).

### 1. *Federal Question § 1331 Removal*

Section 1331 vests federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. There is no single precise way to define when an action will "arise under" federal law. *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Rather, the Supreme Court has avoided a rigid test for § 1331 jurisdiction because "the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Id.* (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

■■■■ A defendant may remove a civil action initially filed in state court to a federal district court if "the action could have originally been brought in federal court." *Yarnevic v. Brink's, Inc.,* 102 F.3d 753, 754 (4th Cir.1996); 28 U.S.C. § 1441(a)(1). Defendants removing state-court actions, absent diversity of citizenship, must establish subject-matter jurisdiction in one of three ways. *See Caterpillar v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). First,

jurisdiction is proper when a federal question is presented on the face of the plaintiff's "well-plead complaint." *Id.; see Gully v. First National Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Because the plaintiff is the master of the claim, he or she may avoid federal jurisdiction by exclusive reliance on state law. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425.

■] Second, there is a well-established exception to the "well-plead complaint" rule for those cases in which "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Verizon Maryland, Inc. v. Global Naps, Inc.,* 377 F.3d 355, 362 (4th Cir. 2004) (internal citations omitted). The Eastern District of Virginia has synthesized recent Supreme Court cases and approaches this inquiry with a three step test:

(1) Whether the state law claim depends on the resolution of a disputed question of federal law;

(2) Whether the disputed federal law question is substantial; and,

(3) Whether the exercise of federal question jurisdiction in the circumstances would disturb any congressionally approved balance of federal and state judicial responsibilities.

*Fastmetrix, Inc. v. ITT Corp.,* 924 F.Supp.2d 668, 674 (E.D.Va.2013) (citing *Grable & Sons Metal Products v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)). A plaintiff's right to relief necessarily depends on "some substantial, disputed question of federal law" when it is a "necessary element of one of the well-pleaded state-claims." *Franchise Tax Bd. of Cal.,* 463 U.S. at 13, 103 S.Ct. 2841.

■ Third, a case is properly removed if federal common law governs it.

However, federal common law is rare and as a threshold matter, a case must implicate "uniquely federal interests for federal common law to apply." *Woodward v. Curtiss–Wright Flight Sys., Inc.,* 164 F.3d 123, 127 (2nd Cir.1999). Such interests arise only in a few areas, such as disputes involving: "(1) the obligations to, and rights of, the United States under its contracts; (2) the liability of federal officers for official acts; and (3) civil liabilities arising out of federal procurement contracts relating to national defense." *Id.* (summarizing the Supreme Court's holding in *Boyle v. United Techs. Corp.,* 487 U.S. 500, 504, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988)).

### 2. *Federal Officer § 1442(a)(1) Removal*

■ The Federal Officer Removal Statute § 1442(a)(1) allows a complaint void of a federal question to nonetheless reach the federal forum if the claims arise under the actions of a federal officer. The federal officer removal statute provides that "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" may be removed to a district court. 28 U.S.C. § 1442(a)(1). The federal officer removal statute should be construed liberally, but the burden is on defendants to establish each of the elements of federal officer jurisdiction. *CRGT, Inc. v. Northrop Grumman Sys. Corp.,* No. 1:12–cv–554, 2012 WL 3776369, at *1 (E.D.Va. Aug. 28, 2012). Therefore, a defendant must establish: (1) that it is a "person" within the meaning of the statute; (2) that the defendant acted pursuant to a federal officer's directions; (3) that a causal nexus existed between the defendant's actions under color of federal office and the plaintiff's claims; and (4) that a colorable federal defense exists. *See id.;*

*Mesa v. California,* 489 U.S. 121, 124–25, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

## B. Analysis

The Court grants Plaintiffs' Motion to Remand because Defendant has not established federal subject-matter jurisdiction. Defendant has failed to show that a disputed federal question exists. The Court finds the Complaint only shows state-law questions whereby relief can be granted without a federal court interpreting any disputed federal law or statute. The Court also finds that although the dispute between Defendant and Plaintiffs relates to a government contract, it does not directly affect issues of national security and therefore does not implicate a unique federal interest.

Further, the Court does not find that Defendant has established that § 1442(a)(1) Federal Officer Removal applies. The Court does not find that Defendant's alleged unlawful actions "arose under" the direction of a federal officer, or that Plaintiff's claims stem from the consequences of actions taken while under the direction of a federal officer. Further, Defendant cannot successfully argue it has a "plausible colorable defense" as required to satisfy the elements of § 1442(a)(1) removal. Therefore, the Court grants Plaintiffs' Motion to Remand.

### 1. *Federal Question § 1331 Removal*

The Court grants Plaintiffs' Motion to Remand because Defendant has not met its burden in establishing federal subject-matter jurisdiction under federal question § 1331 jurisdiction. Federal question jurisdiction is proper when there is a federal question present on the face of the "well-plead complaint," when a "substantial and disputed" federal question must be answered in order for relief to be granted, or when a "unique federal interest" is impli-

cated. It is undisputed that Plaintiffs' Complaint does not plead a federal question on its face. Defendant has not established federal question jurisdiction through either of the alternative methods.

The Supreme Court recently asserted that the Court does not "treat[ ] 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Grable,* 545 U.S. at 314, 125 S.Ct. 2363. It also clarified that the boundaries of federal-question jurisdiction encompass only a "special and small category" of cases that present nearly "pure issue[s] of law" that, once settled, would govern numerous other like cases. *Empire Healthchoice Assur. Inc. v. McVeigh,* 547 U.S. 677, 699, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006).

To illustrate, compare *Grable* with *Empire. Grable* involved real property belonging to the plaintiff, which was seized and sold by the IRS. 545 U.S. 308, 125 S.Ct. 2363. The plaintiff received notice of the seizure by certified mail prior to the sale. *Id.* The governing statute, 26 U.S.C. § 6335(a), provides that "notice in writing shall be given ... to the owner of the property ... or shall be left at his usual place of abode or business...." *Id.* Five years later, plaintiff sued the new property owner to quiet title asserting the title was invalid because the plaintiff had not received proper notice. *Id.* The Court reasoned that the interpretation of a federal tax provision sensibly belonged in federal court and that whether plaintiff received adequate notice under § 6335(a) was an "essential element of [plaintiff's] quiet title claim." *Id.* at 315, 125 S.Ct. 2363. Therefore, it satisfied the "arising under" element of § 1331. *Id.*

In *Empire,* the plaintiff (an insurance plan administrator) brought suit to recover damages from the defendant (a plan beneficiary) for reimbursement of funds paid

from a federal fund created under the Federal Employees Health Benefits Act of 1959. 547 U.S. at 699, 126 S.Ct. 2121. Plaintiff argued that its reimbursement claim "arises under" federal law because federal law is "a necessary element of the claim for relief." *Id.* The Court distinguished *Empire* from *Grable* stating that *Grable* "presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous [similar] cases.' ... In contrast, Empire's reimbursement claim ... is fact-bound and situation-specific." *Id.* at 699–700, 126 S.Ct. 2121. The Supreme Court concluded that "it takes more than a federal element 'to open the 'arising under' door.' " 547 U.S. at 701, 126 S.Ct. 2121 (quoting *Grable,* 545 U.S. at 313, 125 S.Ct. 2363).

▇▇▇ Defendant argues that there is a "substantial and disputed" federal question because the prime contract between it and the Air Force, as well as the subcontract between it and Plaintiffs, are governed by federal regulation and that "there is no way that a court can adjudicate [the tortious interference claims] without resolving substantial and disputed questions of federal law." (Doc. 36, at 6–11.) Specifically, Defendant argues that Plaintiffs' Complaint directly implicates federal law by "explicitly and repeatedly fram[ing] [Defendant's] alleged misconduct in terms of violating federal law, federal procurement regulations (including the Federal Acquisition Regulations), and [Defendant's] prime Contract with the Federal Government." (Doc. 36, at 9.) Defendant argues that as a result the Court will need to "construe[ ] and interpret[ ]" the Subcontract "according to the federal common law of government contracts." (Doc. 36, at 8.)

The Court agrees that this case has several federal elements—Defendant is a prime contractor for the Air Force and the parties have a long history of contractual agreements related to work on federal projects. However, as stated by the Supreme Court, "it takes more than a federal element 'to open the 'arising under' door.' " *Empire,* 547 U.S. at 701, 126 S.Ct. 2121 (quoting *Grable,* 545 U.S. at 313, 125 S.Ct. 2363). Further, the Court is unable to discern any specific federal question it must answer. Defendant fails to direct the Court to any specific disputed federal statute, nor is a federal agency a party to the suit.

In *Morgan County War Memorial Hospital v. Baker,* three sources of federal law—the Employment Retirement Income Security Act of 1974, the Internal Revenue Service, and federal common law—were implicated in the plaintiffs claims. 314 Fed.Appx. 529 (4th Cir.2008). Even so, the court held that:

[T]he fact that federal tax implications may arise from the distribution of the Plan's assets, and that the Appellees rejected a proposed distribution that was approved by the IRS, cannot be a basis for federal jurisdiction. Such a conclusion would shift virtually every business transaction and trust distribution into federal court, violently upsetting the federal/state balance.

*Id.* at 536; *see also Woodward,* 164 F.3d at 127 ("[A] plaintiff seeking to apply federal common law where the United States is not even a party faces a substantial burden in trying to demonstrate an actual, significant conflict between state law and a federal interest"); *Stevens Aviation, Inc. v. DynCorp Int'l LLC,* No. 6:09–2314–HMH, 2009 WL 2997413, at *14 (D.S.C. Sept. 15, 2009) (holding that a treasury-created program formed part of the "backdrop," but did not warrant the exercise of federal question jurisdiction).

The Court rejects the argument that Plaintiffs' Complaint, including its references to Federal Acquisition Regulations

("FARs") violations, necessarily creates federal question jurisdiction. In an analogous case involving a dispute between a government prime contractor and a subcontractor, the defendant removed the case stating the claims were "saturated with numerous embedded federal questions that are essential to [the plaintiff's] claims. Specifically, certain provisions of the Federal Acquisition Regulations ... have been incorporated into the contract and [plaintiff] will rely on those provisions to prove its claims." *C & H Contr. of MS, LLC v. Lakeshore Eng'g Servs.*, No. 1:07CV700, 2007 WL 2461017, at *5 (S.D.Miss. Aug. 24, 2007). The court found that, "[r]ather than raising a substantial disputed federal issue, the allegations of the Complaint employ federal regulations as a measuring rod with which the fact finder can gauge evidence of state-law claims." *Id.* at *7.

Likewise, the Court rejects Defendant's argument that Plaintiffs' claim invokes federal question jurisdiction. Federal jurisdiction is not conferred simply because a contract-driven claim involves federal regulations, such as FARs, or because the contracts are "federal in nature." *Empire,* 547 U.S. at 696, 126 S.Ct. 2121 (holding that federal jurisdiction was not proper even though the contract was negotiated by a federal agency and concerned federal employees). The Court may be asked to refer to or even apply the FARs to the facts of the case, but doing so does not require the court to "interpret" or "construe" any disputed terms of the regulations. (Doc. 1–9, ¶ 37, 38, 45, 59.) A state-court is not precluded from applying federal regulations to the facts. *See C & H Contr. of MS, LLC,* 2007 WL 2461017, at *7; *Nelon v. Mitchell Energy Corp.,* 941 F.Supp. 73, 75 (N.D.Tex.1996) ("The mere fact that a court necessarily must interpret federal law or federal regulations to deter-

mine the merits of a claim is insufficient to confer federal jurisdiction.").

During oral argument, the Court repeatedly asked Defendant to identify the substantial disputed federal question that this Court would need to answer in order to adjudicate Plaintiffs' state law based tort claims. Defendant was unable to direct the Court to any particular statute whose interpretation is disputed such that the Court would need to determine its meaning. Additionally, Defendant was unable to direct the Court to any language in any particular contract implicated by the state law tort claims that is disputed such that it would create a substantial disputed federal question.

Importantly, Plaintiffs are not making a contract-based claim. Indeed, Plaintiffs concede that the terms of the subcontract, as identified by Defendant, are not in dispute. Instead, Plaintiffs allege Defendant interfered with *potential, future* subcontracts. (Doc. 1–9, at 18.) Plaintiffs argue this point without claiming any contractual right to future contracts. Instead, Plaintiffs claim is that based on their past performance, the expertise they possess in the field, and the history between the parties, that they would have been awarded more task orders in the future. (Doc. 41, at 6.) Such a claim implicates neither the underlying federal regulations, nor the law that might have governed prior or future-subcontracts. Such a tortious interference claim is too far removed from the written contracts, assuming they are governed by federal law, to confer federal question jurisdiction. *See Vetro, Inc. v. Active Plumbing & Heating, Inc.,* 403 F.Supp.2d 1033, 1037 (D.Co.2005) (holding that disputes relating to a Letter of Intent are too far removed from any enforceable contract that would be governed by federal law). As a result, the Court holds that the Defendant has not established any substantial or

disputed questions of federal law requiring federal jurisdiction.

The Court also rejects Defendant's second argument that federal common law must be applied pursuant to a choice-of-law provision in the subcontract between the parties, or in the alternative, because a "unique federal interest" is implicated. (Doc. 36, at 7, 14.) The Court does not find the choice-of-law provision applies to this dispute, and also Plaintiffs' tort claims are too far removed from the subcontract to require adjudication in a federal forum. Therefore, the Court will grant Plaintiffs' Motion.

Federal common law jurisdiction is rare and as a threshold matter, a case must implicate "uniquely federal interests for federal common law to apply." *Woodward*, 164 F.3d at 127. Such interests arise only in a few areas, such as disputes involving: "(1) the obligations to, and rights of, the United States under its contracts; (2) the liability of federal officers for official acts; and (3) civil liabilities arising out of federal procurement contracts relating to national defense." *Id.* (summarizing the Supreme Court's holding in *Boyle v. United Techs. Corp.*, 487 U.S. 500, at 504, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988)).

Defendant posits that a choice-of-law clause within a prior subcontract requires this dispute be governed by federal common law. The choice-of-law clause states:

Irrespective of the place of performance, this Subcontract shall be *construed and interpreted* according to the federal common law of government contracts as enunciated and applied by federal judicial bodies, boards of contract appeals, and quasi-judicial agencies of the federal government and as set forth in the applicable provisions of federal law and regulation. To the extent that federal government contract law does not re-

solve a particular issue, the laws of the Commonwealth of Virginia shall apply, exclusive of that body of laws known as conflicts of law.

(Doc. 41, at 21) (emphasis added). However, the choice-of-law argument is misplaced because, as discussed above, Plaintiffs' claims do not rest on an interpretation of the subcontract. Therefore, because "federal government contract law does not resolve [this] particular issue, the laws of the Commonwealth of Virginia shall apply." (*Id.*)

Defendant also argues that "uniquely federal interests" exist because the case involves a contract related to national security. (Doc. 36, at 12.) Defendant cites to *Boyle* as evidence that disputes involving government contractors "arising out of the performance of federal procurement contracts" are "uniquely federal." 487 U.S. at 505–06, 108 S.Ct. 2510. The Court finds that Defendant's reading of *Boyle*— that any contract bearing any relation to national security is governed by federal common law—is too broad. Instead, courts must determine if a contract *directly* relates to national security. *Woodward*, 164 F.3d at 127.

The question of whether the tangential connection to national security via a defense subcontract implicates a "unique federal interest" has been asked and answered. Courts have repeatedly found such contracts are not directly related to national security. *See id.* (ruling that the subcontract to provide test standards for the bay doors on a F–22 fighter plane was "too far removed from issues of uniquely federal concern to call for the application of federal common law"); *Northrop Corp. v. AIL Systems, Inc.*, 959 F.2d 1424, 1425 (7th Cir.1992) (finding complaint to be "barren of any question of unique federal interest and merely describes a contract dispute ... between two private defense

contractors" regarding a "teaming agreement" to award a future subcontract to plaintiff); *Vetro, Inc.,* 403 F.Supp.2d at 1033 (holding that subcontract regarding renovation work on the United States Air Force academy too far removed).

Therefore, the Court grants Plaintiffs' Motion to Remand because it does not find that a "substantial and disputed" question of federal law exists, or that a "unique federal interest" is implicated by the Complaint.

### 2. *Federal Officer § 1442(a)(1) Removal*

The Court also grants Plaintiffs' Motion to Remand because removal under § 1442(a)(1) is not proper when Defendant had near full discretion over sub-contract award decisions and was therefore not "acting under" color of a federal officer. Further, Defendant has failed to establish that the actions at issue were taken in response to direction from the Air Force. Defendant also has failed to establish it can present a colorable defense. Although the parties do not dispute Defendant is a "person" within the meaning of the statute, Defendant has the burden of establishing each of the four prongs and does not do so successfully. Therefore, the case must be remanded.

To establish federal officer removal jurisdiction, a defendant must establish: (1) that it is a "person" within the meaning of the statute; (2) that the defendant acted pursuant to a federal officer's directions; (3) that a causal nexus existed between the defendant's actions under color of federal office and the plaintiff's claims; and (4) that a colorable federal defense exists. *See Mesa,* 489 U.S. 121, 109 S.Ct. 959. If a defendant fails on any one of these elements, removal is not proper. *Id.; see also Epperson v. Northrop Grumman Sys. Corp.,* No. 4:05–CV–2953, 2006 WL 90070 (E.D.Va. Jan. 11, 2006).

Defendant argues it was "acting under" a federal officer because, pursuant to its prime contract with the Air Force, it was "helping the U.S. Air Force Space Command officials carry out their official duties, working hand-in-hand with them to evaluate, select, and manage subcontractors to protect military facilities against high-altitude electromagnetic pulse attacks." (Doc. 36, at 17.) But in order to satisfy the "acting under" prong, a federal officer must have "direct and detailed control over the defendant" such that "the acts that form the basis for the suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Ryan v. Dow Chemical Co.,* 781 F.Supp. 934, 947 (E.D.N.Y.1992). If the party "establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal." *Arness v. Boeing N. Am., Inc.,* 997 F.Supp. 1268, 1273 (C.D.Cal.1998); *see also Pittsburgh Inst. of Aeronautics v. Allegheny Cnty. Airport Auth.,* No. 2:07–cv–1638, 2008 WL 2456491, at *1 (W.D.Pa. June 16, 2008) (showing the removing party acted under "general auspice[ ] of federal direction" is insufficient for the federal officer removal statute "because mere participation in a regulated industry does not prove direct and detailed control").

Defendant asserts that it does "not do anything with respect to soliciting, evaluating, or selecting subcontractors on a particular project until the Air Force initiates the process by preparing a detailed draft task order." (Doc. 36, at 18.) Defendant also claims that on "multiple occasions [Defendant] recommended to the Air Force that work be given to one subcontractor, but the Air Force overruled [Defendant's] recommendation and directed [Defendant] to award the task order to the

subcontractor who was next in line for the award." (Doc. 36, at 21.)

The Court finds, however, that the record does not support Defendant's assertions that the selection of subcontractors was under the "direct and detailed control" of a federal officer. First, this Court finds that waiting for authorization from the Air Force to solicit a subcontractor does little to diminish Defendant's autonomy in soliciting, evaluating, or selecting subcontractors. In fact, Defendant asserts in a later argument that it has discretion over much of the process, including seeking out proposals from subcontractors, deciding how task order competitions will be operated and awarded, and making award recommendations to the government. (Doc. 36, at 26.)

The testimony of Defendant's former project manager, Donald Eich, further contradicts Defendant's claims. When asked, "Were you ever directed by anybody at Air Force Space Command to give a particular job to one contractor as opposed to another?" Eich answered, "No." (Doc. 41, at 15.) Instead, his testimony suggests that if a recommendation is rejected, the government will list the non-compliant issues, but it does not direct Defendant to award the contract to another specific subcontractor. (Doc. 36–1, at 4:3–5:13, 7:7–8:4.) It appears that, even after a rejection, Defendant was free to make another recommendation—admittedly in some cases, Defendant would recommend Jaxon rather than Plaintiffs. (Doc. 36–1, at 7:7–8:4.) It does not appear the government provided "direction," but only that it acted in response to Defendant's requests for approval. (Doc. 41, at 15.) As a result, the Court finds Defendant merely acted under the general auspices of federal direction, and is not entitled to § 1442(a)(1) removal.

The nexus element of federal officer removal can be established by showing that the "claims arise as a consequence of the defendant carrying out the directives of a federal officer." *CRGT, Inc.*, 2012 WL 3776369, at *2. As discussed above, Defendant argues its decisions regarding subcontractor awards were directed by the Air Force. (Doc. 36, at 21.) The Court has already rejected this argument by finding that Defendant exerted a great deal of autonomy in soliciting, evaluating, or selecting subcontractors, therefore, Defendant cannot satisfy the element of causation. Additionally, Plaintiffs' claim for tortious interference with future, potential subcontracts is only one sub-part of its overall grievances. The remainder of Plaintiffs' allegations are regarding Defendant's alleged actions that were beyond the scope of any directive they may have had from the Air Force. Such examples include encouraging L–3 employees to steal trade secrets and technology from L–3, or to wrongfully seek inventory, materials, and equipment from L–3.

▮▮▮▮▮ Lastly, Defendant claims it has a "colorable federal defense" by asserting it qualifies for derivative sovereign immunity under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2672–80 (Doc. 36, at 25). However, Defendant does not direct the Court to any cases where the FTCA was successfully used to satisfy the "colorable federal defense" element of the federal officer removal statute. To be protected by derivative sovereign immunity, a federal contractor must (1) be performing a "discretionary function" under the FTCA; and (2) have been authorized by the government to commit the specific acts of which the plaintiff complains. *See Metzgar v. KBR, Inc. (In re KBR, Inc.)*, 744 F.3d 326, 344–46 (4th Cir.2014). A discretionary function involves an element of judgment or choice that is grounded in

considerations of public policy. *Berkovitz ex rel. Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The "authorization" inquiry involves "determining whether [the defendant] exceeded [its] authority under [its] valid contract, which the [Fourth Circuit] also characterized as exceeding the scope of [its] employment." *Id.* at 344 (quoting *Butters v. Vance Int'l, Inc.,* 225 F.3d 462, 466 (4th Cir.2000)) (internal quotations omitted).

In addressing the "discretionary function," Defendant argues it had a high degree of judgment or choice over much of the process, including seeking out proposals from subcontractors, deciding how task order competitions would be operated and awarded, and making award recommendations to the government. (Doc. 36, at 26.) Defendant claims its decisions were predicated on finding the "best value" for the government and as such is "steeped in public policy and economic consideration." (*Id.*) Defendant fails to address whether it exceeded its authority under its contract. The Court does not need to decide on that matter, however, because Defendant's argument defeats its own claim that § 1442(a)(1) removal is appropriate. In order for Defendant to successfully argue it "acted under" a federal officer, the Court must accept that the Air Force "directed" how to handle specific tasks. If the Court accepts this proposition, Defendant's arguments that its functions are discretionary seem contradictory. *See Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954.

As a result, the Court grants Plaintiffs' Motion to Remand because Defendant cannot establish all four prongs as is required for removal under § 1442(a)(1).

### III. *CONCLUSION*

The Court GRANTS Plaintiffs' Motion to Remand because no substantial and dis-

puted question of federal law must be answered in order to provide relief to the Plaintiffs. Further, the Complaint does not involve a "substantial federal interest" that requires adjudication in a federal forum. The Court also grants Plaintiff's Motion to Remand because Defendant does not qualify for removal pursuant to § 1442(a)(1).

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff L–3 Communications Corporation and L–3 Applied Technologies. Inc's Motion to Remand (Doc. 17) is **GRANTED;**

**IT IS FURTHER ORDERED** that Defendant's Motion to Change Venue (Doc. 21) and Motion to Dismiss (Doc. 43) are **DENIED AS MOOT.**

**IT IS SO ORDERED.**